IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN A. S., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 25-cv-00030-SH |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff John A. S. requests judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For the reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

decision is supported by substantial evidence. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on August 8, 2022. (R. 213–14, 223–33.) In his applications, Plaintiff alleged he has been unable to work since January 1, 2019, due to neck injury and shoulder pain. (R. 213, 223, 279.) Plaintiff was 43 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 30, 213.) He has a high school education and has past relevant work as a saw operator. (R. 60, 280.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 67–85.) Plaintiff then requested and received a hearing before an ALJ. (R. 36–66, 112, 115–16.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17–30.) The Appeals

Council denied review (R. 1–3), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4]  Plaintiff now appeals.

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2020. (R. 19.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 20.) At step two, for the period starting from Plaintiff's Title XI application date, the ALJ found Plaintiff had the following severe impairments: (1) cubital tunnel syndrome; (2) degenerative joint disease in the bilateral shoulders; and (3) degenerative disc disease in the cervical spine with cervical stenosis, myelopathy, and radiculopathy.[5] (R. 21–22.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 22.)

The ALJ then determined that Plaintiff had the RFC to perform light work with the following limitations:

> The claimant is able to lift or carry, push, or pull twenty (20) pounds occasionally and ten (10) pounds frequently. The claimant can sit for six (6) hours out of an eight-hour day, and stand or walk a combined total of six (6) hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch, and crawl. The claimant can frequently but not continuously use the bilateral upper extremities for tasks such as reaching, handling, fingering, and feeling.

(*Id.*) The ALJ then provided a recitation of the evidence that went into this finding. (R. 22–28.) At step four, the ALJ found Plaintiff unable to perform his past relevant work.

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

[5] For Title II purposes, the ALJ found Plaintiff had no severe impairments prior to the date last insured. (R. 20–22.) Plaintiff does not appeal this ruling or provide any basis to overturn the ALJ's finding that Plaintiff was not entitled to Title II benefits.

(R. 28.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Final Inspector, Counter Clerk, School Bus Monitor, and Furniture Rental Clerk. (R. 28–29.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 29–30.)

## IV. Issues

Plaintiff raises a single allegation of error in his challenge to the denial of benefits: the ALJ failed to properly evaluate Plaintiff's symptoms relating to his cervical spine and upper extremity impairments. (ECF No. 10 at 7–15.) The Court finds no error.

## V. Analysis

### A. Requirements for Symptom Analysis

The regulations define "symptoms" as a claimant's "own description" of his "physical or mental impairment." 20 C.F.R. § 404.1502(i).[6] When evaluating symptoms, the ALJ uses a two-step process.[7] *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.[8] First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). Second, once such

---

[6] *See generally* 20 C.F.R. § 416.902(n) for Title XVI.

[7] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012). Plaintiff frames his arguments using the *Luna* factors. (ECF No. 10 at 10.) The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593–94 (10th Cir. 2016). The Court, therefore, examines Plaintiff's arguments under the regulation and SSR 16-3p.

[8] *See generally* 20 C.F.R. § 416.929 for Title XVI.

impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c)(1).

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3)(i)-(iv). The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence he relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391). This is particularly true given that courts are prohibited from reweighing evidence or substituting their judgment for that of the Commissioner, *Bowman*, 511 F.3d at 1272, even if they would have reached a different conclusion, *White*, 287 F.3d at 908.

That is not to say, however, that the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent

with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### B. The ALJ's Symptom Analysis

Here, the ALJ adequately accounted for Plaintiff's symptoms. At step two, the ALJ found Plaintiff had the severe impairments listed above. (R. 21.) Then, the ALJ summarized Plaintiff's administrative hearing testimony, noting that Plaintiff stated he falls often; has balance issues; is completely numb on his right side; has constant muscle cramps; can sit for ten to fifteen minutes before his tailbone starts burning; and can stand for thirty seconds before having balance issues. (R. 23.) The ALJ then found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements regarding the intensity, persistence, and limiting effect of his symptoms were "inconsistent with the medical evidence." (*Id.*) For example, the ALJ highlighted an October 2023 physical examination showing full range of motion in the extremities, 5/5 muscle strength in the upper and lower extremities, and a stable gait. (R. 23–24 (citing R. 521–30).) The ALJ then provided a more detailed summary of the medical evidence. (R. 24–27.) In concluding the RFC assessment, the ALJ pointed to other inconsistencies between Plaintiff's subjective symptoms and the objective medical evidence, including: (1) an August 2020 examination showing Plaintiff had full range of motion in the right shoulder with no pain or instability and some pain in the left shoulder but with no evidence of gross weakness and only mild degenerative changes at the AC joint (R. 27 (citing R. 464–65)); (2) an October 2021 examination showing Plaintiff had full movement in the shoulder, elbow, and wrist, despite a slightly positive Tinel's at the cubital tunnel and general weakness in the ring and small finger (*id.* (citing R. 461–62));

7

and (3) a December 2022 examination showing Plaintiff had no pain in legs while walking, no joint erythema or tenderness, and no gross muscular abnormalities (*id.* (citing R. 515–16)).  Based on all the listed evidence, the ALJ determined that, while Plaintiff "would undoubtedly have some difficulties," he could perform light work with certain postural and manipulative limitations.  (*Id.*)

### C. Plaintiff's Arguments

Plaintiff asserts the ALJ's symptom analysis was deficient because the ALJ (1) failed to address the factors outlined in 20 C.F.R. § 404.1529(c)(3) (ECF No. 10 at 11), and (2) selectively relied on evidence (*id.* at 11–15).  The Court is unpersuaded.

#### 1. Discussion of Factors

First, the Court rejects Plaintiff's argument that the ALJ did not address the factors outlined in 20 C.F.R. § 404.1529(c)(3).  Although the ALJ did not provide a "formalistic factor-by-factor recitation of the evidence," such analysis is not required when, like here, the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's" symptoms.  *Qualls*, 206 F.3d at 1372.  As noted above, the ALJ's reasoning for finding Plaintiff's symptoms were not as functionally limiting as alleged was based on treatment records that demonstrate, among other things, that Plaintiff had full range of motion and strength in the upper and lower extremities and had no pain while walking.  (R. 27 (citing, e.g., R. 515, 527).)  These records contradict Plaintiff's claims of disabling numbness and serve as substantial evidence for the ALJ's symptom findings.  Moreover, it is clear from a review of the ALJ's decision that he weighed and considered Plaintiff's daily activities

(R. 23[9]); the location, duration, frequency, and intensity of Plaintiff's symptoms (*id.*[10]); the precipitating and aggravating factors (*id.*[11]); the type, dosage, effectiveness and side effects of medications (R. 25[12]); the treatment aside from medication (R. 23, 25[13]); the other measures used to relieve Plaintiff's symptoms (R. 26[14]); and other relevant factors concerning Plaintiff's limitations (R. 23[15]).  Despite Plaintiff's arguments otherwise, the ALJ performed a sufficient symptom analysis.

> **2.     Improper Picking and Choosing**

Second, Plaintiff argues that the ALJ's reasoning for discounting his symptoms are not consistent or supported by the record (and therefore not supported by substantial evidence), because the ALJ selectively relied on favorable evidence while ignoring unfavorable evidence. (ECF No. 10 at 10–15.)  When discussing medical evidence, it is improper for an ALJ to "pick and choose among medical reports, using portions of

---

[9] Noting Plaintiff's testimony that he does not drive very much, can only sit for ten to fifteen minutes at a time, and can only stand for thirty seconds before needing to grab onto something.  (R. 23.)  The Court rejects Plaintiff's argument that the ALJ failed to discuss Plaintiff's daily activities.  (ECF No. 10 at 14.)

[10] Noting, e.g., Plaintiff's testimony that his right leg and foot are numb and that he falls often.  (R. 23.)

[11] Noting, e.g., Plaintiff's testimony that his tailbone will start to burn if he sits too long. (R. 23.)

[12] Noting Plaintiff's Gabapentin prescription was increased. (R. 25 (citing R. 477-78, 487-88).)

[13] Noting two neurosurgeons have recommended that Plaintiff have neck surgery, but Plaintiff is unsure if he wants to go through with it.  (R. 23, 25 (citing R. 477-78, 487-88, 515-16).)

[14] Noting Plaintiff extends his right arm behind and over his head with his neck forward flexed, because that is the only comfortable position for his right arm.  (R. 26 (citing R. 532-33).)

[15] Noting Plaintiff's testimony that he cannot use a cane because he cannot feel it in his hand.  (R. 23.)

evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). But, the ALJ is under no obligation to "discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Rather, in addition to the evidence supporting his decision, the ALJ must also discuss "the uncontroverted evidence he chooses not to rely upon" and the "significantly probative evidence he rejects." *Id.* at 1010; *see also id.* at 1009 (explaining "[t]he record must demonstrate that the ALJ considered all of the evidence").

To support his argument, Plaintiff summarizes his treatment record, including other physical examinations where Plaintiff exhibited positive Tinel's sign in the cubital tunnel, significant weakness in fingers, muscle atrophy in biceps, weakness in the biceps and triceps, positive Hoffman's sign in upper bilateral extremities, reduced grip strength, weakness in the bilateral legs with diminished sensation, and some muscle loss in calves. (ECF No. 10 at 12 (citing R. 453 (June 2022 exam); R. 462 (October 2021 exam); R. 477 (July 2022 exam); R. 534 (November 2023 exam)).) Plaintiff also summarizes the imaging of record, which shows that Plaintiff has severe left foraminal stenosis at C3-C4; severe right and severe central spinal canal stenosis at C4-C5; severe bilateral foraminal and severe central spine canal stenosis at C5-C6; severe bilateral neuroforaminal stenosis, and moderate spinal canal stenosis at C6-C7. (*Id.* at 13 (citing R. 518).) But the ALJ's decision explicitly discussed most of the evidence. (R. 24 (noting positive Tinel's sign, significant weakness in fingers, and muscle atrophy/weakness in biceps); R. 25 (noting record imaging); R. 26 (noting weakness in legs, diminished sensation, and muscle loss in calves).) Where the ALJ did not specifically discuss other evidence—e.g., tricep weakness and grip strength (R. 477)—the ALJ clearly reviewed and referred to the exhibit containing those notations. (R. 25 (citing other portions of specific treatment record

(citing R. 477–78))[16]) By pointing to evidence the ALJ clearly considered, Plaintiff's is essentially asking that the Court reweigh the evidence on his behalf, which the Court cannot do. *Bowman*, 511 F.3d at 1272. Plaintiff's identification of these records do not support reversal.

Here, the ALJ's symptom analysis was based on multiple physical examinations that had mostly normal findings. (R. 461–62, 464–65, 515–16, 521–30.) This is not a case where the ALJ relied on a single notation in his evaluation, nor is this a case where the ALJ mischaracterized record evidence. *Cf. Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017)[17] (finding reversible error where ALJ "mischaracterized or downplayed the severity of some evidence to support his adverse credibility finding, without considering other probative evidence that tends to support [plaintiff's] allegations of pain and limited functioning"); *Hubert A. M. v. Saul*, No. 20-CV-00297-SH, 2021 WL 2568044, at *5–6 (N.D. Okla. June 23, 2021) (finding reversible error where ALJ mischaracterized counseling records and used selective portion of Plaintiff's testimony). As noted above, the ALJ sufficiently reviewed both the "favorable" and "unfavorable" medical evidence. (R. 23–27.) After reviewing these records, the ALJ did not find Plaintiff to be without limitations. Rather, the ALJ found Plaintiff could only perform

---

[16] Plaintiff has not argued this uncited evidence is significantly probative, nor has Plaintiff adequately explained how this information provides any symptoms or medical findings that are not addressed elsewhere in the ALJ's decision. (*See* R. 24 (noting Plaintiff had significant weakness with resistive abduction of his digits (citing R. 453); R. 25 (noting Plaintiff had atrophy in the upper extremities (citing R. 477-78)).)

[17] Unpublished decisions are not precedential but may be cited for their persuasive value. 10th Cir. R. 32.1(A).

light work with additional postural and manipulative limitations. This finding was supported by substantial evidence.

## VI.    Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 13th day of November, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT